# United States Court of Appeals for the Fifth Circuit

─────────────

No. 25-10830

─────────────

United States Court of Appeals
Fifth Circuit

**FILED**

March 2, 2026

Lyle W. Cayce
Clerk

TONY MCDONALD,

*Plaintiff—Appellant*,

*versus*

FEDERAL ELECTION COMMISSION,

*Defendant—Appellee*.

─────────────────────────────────

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:25-CV-153

─────────────────────────────────

Before CLEMENT, DOUGLAS, and RAMIREZ, *Circuit Judges*.

PER CURIAM:[*]

Appellant Tony McDonald appeals the district court's order granting Appellee Federal Election Commission (FEC)'s motion to dismiss without prejudice for lack of subject matter jurisdiction. We AFFIRM.

I

McDonald contributed $1 to Marianne Williamson's presidential campaign in June 2019. This contribution was processed through ActBlue.

─────────────────────────

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

1

No. 25-10830

As is required by 52 U.S.C. § 30116(a)(8), which governs the disclosure of contributions made through conduit platforms, the contribution was disclosed to the FEC. In June 2023, McDonald made another contribution of $50 to an unnamed federal candidate. McDonald allegedly limited his contribution to under $200 in part because he believed it would remain anonymous. Unknown to McDonald, this contribution was also routed through a conduit, so it was also publicly reported to the FEC.

McDonald sued the FEC in the Northern District of Texas on February 18, 2025. He claimed that 52 U.S.C. § 30116(a)(8)'s requirement that conduit platforms report all donations to the FEC is unconstitutional under the First Amendment as applied to donations of up to $200, because it burdens donors' rights of association and political speech. He contrasted this requirement with 52 U.S.C. § 30104(b)(3)(A)'s limited disclosure requirement for contributions made directly to political committees, which applies only to persons making contributions worth more than $200 per calendar year or election cycle. McDonald requested declaratory and injunctive relief removing his past small-dollar donations from the FEC's public reports and permanently enjoining the FEC from requiring his donations to conduit platforms of $200 or less to be disclosed.

The FEC moved to dismiss McDonald's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The district court granted the FEC's motion without prejudice on the grounds that McDonald had not alleged an Article III injury and thus did not have standing to pursue his claim. The district court did not go beyond injury in fact, the first prong of the standing analysis, because it determined that the public disclosure of donor information is not in itself a cognizable injury, and that McDonald had alleged no separate injury downstream from that disclosure.

2

No. 25-10830

## II

"We review *de novo* the dismissal for lack of subject matter jurisdiction." *Umphress v. Hall*, 133 F.4th 455, 462 (5th Cir. 2025) (per curiam). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction," but we "must accept as true the complaint's factual allegations." *Id.* (citation modified).

## III

To establish standing, a plaintiff "must demonstrate that he has suffered (1) an injury in fact, (2) that is fairly traceable to the Defendant['s] actions, (3) that is likely to be redressed by a favorable outcome." *Abdullah v. Paxton*, 65 F.4th 204, 208 (5th Cir. 2023) (per curiam) (citation modified). To satisfy the injury-in-fact requirement, a plaintiff "must plead that he has sustained or is immediately in danger of sustaining some direct injury." *Id.* (citation modified). "That injury needs to be concrete and particularized, as well as actual or imminent," and, "importantly, it cannot be speculative, conjectural, or hypothetical," so "allegations of only a possible future injury . . . will not suffice." *Id.* (citation modified).

On appeal, McDonald argues that the district court erred in holding that he had suffered no injury (1) because anonymous speakers suffer an injury in fact when the government violates their right to remain unknown, and (2) because laws requiring donor disclosure chill speech and association, which is itself an injury. In response, the FEC argues that McDonald's anonymous speaker-based cases deal with harms from disclosures that predictably generate some other, more concrete harm such as threats or harassment, and that the chilled-speech line of cases only applies to pre-enforcement challenges where plaintiffs allege the imminent enforcement of a challenged law against them. We agree with the FEC.

No. 25-10830

First, McDonald points to no case where the disclosure of donor information without more was held to amount to a cognizable Article III injury. In *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958), for instance, the Supreme Court treated a court order compelling disclosure of names and addresses of the NAACP's Alabama membership as inflicting a concrete harm, but noted that the NAACP had "made an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *NAACP*, 357 U.S. at 462. "*Under these circumstances*," the Court concluded, "it [is] apparent that compelled disclosure of [the NAACP's] Alabama membership is *likely to affect adversely the ability of petitioner and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate*, in that it may induce members to withdraw from the Association and dissuade others from joining it because of fear . . . ." *Id.* at 462–63 (emphasis added); *see also Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 367, 370 (2010) (stating that as-applied challenges to disclosure requirements may be brought based on a reasonable probability of threats, harassment, or reprisals, and distinguishing where no such threats were shown). Far from alleging past or impending economic, physical, and other concrete harm, McDonald's complaint only speculates that 52 U.S.C. § 30116(a)(8)'s disclosure requirement may "adversely impact [his] political activities, including his future giving," and that, as General Counsel for the Tarrant County Republican Party, he "would not want his personal support for a candidate to imply that the Tarrant County Republican Party as an institution supports the candidate."[1] This kind of speculative, "some day"

---

[1] The Supreme Court's assumption that the plaintiff organizations in *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021), had standing does not compel the opposite conclusion. In that case, the plaintiffs challenged the required disclosure of their major

4

No. 25-10830

harm, "without any description of concrete plans, or indeed even any specification of *when* the some day will be," does not satisfy the imminent concrete injury requirement, and McDonald alleges no past harm beyond disclosure. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992).

Second, McDonald's attempt to invoke the chilled speech line of First Amendment standing cases is unavailing. Our chilled speech cases are best understood as an exception to the ordinary way standing works: because First Amendment rights require "breathing space" to survive, courts "relax[]" standing requirements somewhat in certain First Amendment cases. *United States v. Jubert*, 139 F.4th 484, 493 (5th Cir. 2025) (quoting *Broadrick v.*

_____

donors to the state, and "introduced evidence that they and their supporters ha[d] been subjected to bomb threats, protests, stalking, and physical violence." *Americans for Prosperity*, 594 U.S. at 617; *see also X Corp. v. Media Matters for Am.*, 120 F.4th 190, 198–99 (5th Cir. 2024) (staying discovery order compelling disclosure of defendant's donors on grounds that it was unnecessary and "could enable others to harass or intimidate" the defendant or its donors in part based on potential for First Amendment harm, but declining to reach First Amendment issues). *Americans for Prosperity* does state that facial challenges to disclosure requirements do not require a "demanding showing" of potential harassment or reprisal prior to a showing that the challenged law is narrowly tailored to an important government interest, but McDonald does not bring a facial challenge based on an immediately impending chill of the kind at issue in that case—there, the plaintiffs had already taken the precise action triggering the challenged disclosure requirement, but declined to disclose due to the alleged chill. 594 U.S. at 617, 620. Instead, he states generally that he "wants to make additional small dollar donations in the future" but "fears repercussions" like "demands for similar donations from other candidates" or "confusion over the Tarrant County Republican Party's stance in primary races." Moreover, unlike the plaintiffs in *Americans for Prosperity*, McDonald does not challenge a law that directly requires *him* to disclose anything; rather, he challenges the requirement that the conduit platforms disclose information about him to the FEC, when he is free to make direct campaign contributions without triggering the disclosure requirement. Thus, McDonald is at two removes from *Americans for Prosperity*. In sum, *Americans for Prosperity* is not about any alleged harm from a prior disclosure, and, without discussing standing, only addresses a challenge based on particular required disclosures that were at the time "certainly impending," not merely a "product of . . . fear." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 417 (2013).

5

*Oklahoma*, 413 U.S. 601, 611 (1973)); *see also Book People, Inc. v. Wong*, 91 F.4th 318, 329–31 (5th Cir. 2024) (finding that the injury-in-fact requirement was satisfied where law prohibited plaintiff bookstores from selling books to public schools without engaging in compelled speech). But we have never held that they may be so relaxed as to permit a challenge to a law that does not even arguably proscribe any conduct of the plaintiff, and McDonald points us to no case where another court has done so. *See Speech First, Inc. v. Fenves*, 979 F.3d 319, 332 (5th Cir. 2020) ("[Plaintiff] must clearly show a likelihood that its . . . constitutionally protected speech is arguably proscribed, or at least arguably regulated, by the . . . [challenged] policies."); *Book People*, 91 F.4th at 330–31 (emphasizing that challenged law restricted plaintiffs' own conduct, and indirect enforcement resulted in predictable coercion); *Jubert*, 139 F.4th at 492–93 (discussing the "oddity" of facial overbreadth challenges based on the potential First Amendment harm to another).

The general rule is that "[a] threatened future injury must be 'certainly impending' to constitute an injury in fact, and a 'theory of standing[ ] which relies on a highly attenuated chain of possibilities[ ] does not satisfy the [certainly-impending] requirement.'" *Louisiana v. Haaland*, 86 F.4th 663, 666 (5th Cir. 2023) (alterations in original) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)). McDonald's speculation about what he might do in response to the possibility of future disclosures, and what someone else might think based on such unspecified hypothetical disclosures, is a "subjective" chill of the kind that we have consistently excluded from this exceptional form of standing. *Texas State LULAC v. Elfant*, 52 F.4th 248, 256 (5th Cir. 2022); *see also Pool v. City of Houston*, 978 F.3d 307, 311 (5th Cir. 2020) ("Not just anyone has standing to bring such a [First Amendment chill-based] suit. Plaintiffs . . . must show that they are

No. 25-10830

seriously interested in disobeying, and the defendant seriously intent on enforcing, the challenged measure." (citation modified)).

## IV

The district court's judgment is AFFIRMED.